IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| MARIE BROWN AND WESLEY DEVEREAUX, <br><br> Plaintiffs, <br><br> v. <br><br> DRD PAT HOTEL, LTD. a/k/a HOLIDAY INN PORT ARTHUR- PARK CENTRAL <br><br> Defendant. | § § § § § § § § § § § § § CIVIL ACTION NO. 1:11-cv-353 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Marie Brown and Wesley Devereaux file this Original Complaint against DRD Pat Hotel, LTD., a/k/a Holiday Inn Port Arthur- Park Central, for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Marie Brown ("Brown") and Plaintiff Wesley Devereaux ("Devereaux"), (collectively referred to as "Plaintiffs"), are currently citizens and residents of the State of Texas.

2. Defendant DRD Pat Hotel, LTD., a/k/a Holiday Inn Port Arthur- Park Central ("DRD" or "Defendant"), is a Texas limited partnership, authorized to do business, and is doing business, in the State of Texas. DRD's main corporate office is located in Bartonville, Texas. Defendant may be served through its registered agent for service, Kathie Dreiske Rachwal, located at 799 E. Jeter Road, Bartonville, Texas 76226.

3. The court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 & §1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

4. Brown filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") in July of 2010, alleging sex discrimination, sexual harassment, and illegal retaliation. This action is being commenced within the required statutory time limits as the Notice of Right to Sue was issued on May 23, 2011.

5. Devereaux filed a "Charge of Discrimination" with the Equal Employment Opporunity Commission ("EEOC") in November of 2010, alleging illegal retaliation. This action is being commenced within the required statutory time limits as the Notice of Right to Sue was issued on May 23, 2011.

## III. FACTUAL BACKGROUND

6. In 2009, Brown commenced employment with DRD as a cook. Sometime thereafter, Brown was forced to work with another breakfast cook, who started to sexually harass her at work on almost a daily basis. These inappropriate acts by the cook included, but were not limited to the following:

* Inappropriate touching and poking of buttocks, and breasts, including placing his crotch on her buttocks and gyrating;

* Comments about cloths and under garments;

* Making sexual gestures with his eyes and mouth;

* Comments related to requesting various sex acts, and use of graphically descriptive words to refer to these sex acts, sexual organs and body parts; and

* exposing his penis to her and others.

7. Brown rebuked the supervisor's advances on virtually every occasion, but this did not deter the supervisor.

8. Brown repeatedly complained to the head chef/kitchen manager about the sexual harassment that was going on, who in turn told her that nothing could be done unless somebody else heard or saw what was happening. (Note: this did not make sense as another female employee had also been harassed and saw what was happening, and it was clear that this manager knew or should have known what was happening).

9. Finally, after enduring months of abuse, on or about April 18, 2010, Brown complained to the general manager about the sexual harassment. On that day Brown called in to work to find out what time she was supposed to come in to work that day. The harassing-breakfast cook answered the phone and told her to come in early so he could "eat that puss* and lick that as*." Brown became extremely upset and called her mother, who called DRD. Brown talked to the general manager and told him what had happened. Although Brown was supposed to come in early for a hotel function that day, the general manager told Brown that she did not need to come in to work that day.

10. The following day, a meeting was held with Brown, the kitchen manager, the general manager, and the assistant general manager, (with the president of DRD attending via telephone). Although the meeting was supposed to involve Brown's complaints of sexual harassment, Brown was issued a written warning for failing to show up to work the previous day, (even though -- as discussed above -- Brown was told not to come to work).

11. Thereafter, Brown gave DRD a written statement regarding the harassment, identifying another employee that had to endure the sexual harassment as well. Finally, DRD fired the sexual harasser, (who is believed to have later been incarcerated for rape). A few weeks later, (on or about June 12, 2010), Brown was terminated by DRD, (who later tried to claim Brown had not been fired, but instead stopped coming to work). Despite any claims by DRD, Brown was terminated for making complaints of sexual harassment.

12. On or about June 14, 2010, the general manager approached Devereaux, Brown's brother, and asked why Brown had failed to show up for work. Devereaux stated that Brown had not refused to come to work, but that she had been fired by the kitchen manager. Despite this claim, the general manager again fired Brown for failing to come to work.

13. After firing Brown and Devereuax having confirmed that she had not come to work because the kitchen manager terminated Brown, Devereaux was treated harshly by DRD. It was clear that this harsh treatment was the result of Brown's sexual harassment complaints, and his support for her factual claim that she had been terminated by the kitchen manager for making complaints of sexual harassment. Subsequently, in October 2010, DRD fired Devereaux. Despite any claims by DRD, this termination was the result Devereaux's sister, Brown, making complaints of sexual harassment, and/or his willingness to confirm that DRD had illegally retaliated against Brown by terminating her.

## IV. CAUSE OF ACTION--VIOLATION OF TITLE VII

14. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 13 as if fully stated herein.

15. Plaintiffs have satisfied all jurisdictional prerequisites in connection with their claim under the Civil Right Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et. seq.* ("Title VII").

16. DRD is an "employer" as defined by the Title VII.

17. Each plaintiff is an "employee" as defined by Title VII.

18. During the time that Brown was employed by Defendant, Brown was subjected to severe and pervasive sexual harassment, and retaliation, by DRD, for engaging in protected activity as defined by Title VII. These actions created a hostile-work environment, affected the terms and conditions of Brown's employment, and ultimately led to the discharge of Brown.

19. During the time that Devereaux was employed by Defendant, Devereaux was subjected to retaliation by Defendant for he and his sister's act of engaging in protected activity as defined by Title VII. These actions affected the terms and conditions of Devereaux's employment, and ultimately led to his discharge.

20. Defendant did not have adequate policies or procedures in place to address the sexual harassment and retaliation, nor did it implement prompt remedial measures.

21. As described above, Defendant intentionally and willfully violated Title VII by sexually harassing and retaliating against Plaintiffs. In illegally harassing and retaliating against Plaintiffs, Defendant acted with malice and/or reckless indifference to the statutory-protected rights of Plaintiff.

22. As a result of Defendant's violations of the Title VII, Plaintiffs have suffered mental trauma, actual damages in the form of lost wages and benefits (past and future), and other losses.

23. As a result of these willful violations of the Title VII, Plaintiffs requests that they be awarded all compensatory and punitive damages, to which they are entitled, as outlined in the Title VII, as well as all equitable relief, and attorney fees and costs.

## V. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiffs requests that Defendant be cited to appear and answer, and that on final trial, Plaintiffs have judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits (both past and future), the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory and equitable damages in the maximum amount allowed by law;

c. Judgment against Defendant for punitive damages in the maximum amount allowed under law;

d. An order that Defendants take such other and further actions as may be necessary to redress its violation of the law;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including attorney's fees;

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled under Title VII.

Respectfully submitted by:

_____
**Robert (Bobby) Lee**
State Bar No. 00787888
lee@l-b-law.com
**Carmen Artaza**
State Bar No. 24055114
artaza@l-b-law.com
**LEE & BRAZIEL, LLP**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Tel: (214) 749-1400
Fax: (214) 749-1010

**Joel Cohen**
State Bar No. 24048142
**LAW OFFICES OF JOEL E. COHEN**
Dominion Plaza
17304 Preston Road, Suite 800
Dallas, Texas 75252
Telephone: (972) 867-9549
Facsimile: (972) 867-9549
joelshah@verizon.net

**ATTORNEYS FOR PLAINTIFF**